**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lewis WARD, Defendant-Appellant.**

**No. 16269.**

United States Court of Appeals Seventh Circuit.

Dec. 26, 1967.

William F. McNagny, Fort Wayne, Ind., Lewis Ward, pro se, for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and MAJOR, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Chief Judge.

This is an appeal from an order of the district court denying the motion of defendant-appellant Lewis Ward to vacate a judgment of conviction and sentence of that court under which he is now in custody, such motion having been filed pursuant to the provisions of Title 28, U.S.C.A. § 2255.

Ward is presently serving two 12-year sentences concurrently as a result of his conviction, following a trial by jury, of both counts of a two-count indictment.

In Count I, Ward was charged with being a transferee of marihuana required to pay the tax imposed by 26 U.S.C.A. § 4741(a), [who] did acquire and obtain approximately 418.720 grams of marihuana without having paid such tax, in violation of 26 U.S.C.A. § 4744(a) (1) of the United States Code.[1]

In Count II, Ward was charged with transferring such marihuana to Ernest B. Jamison not in pursuance of a required written order, in violation of 26 U.S.C.A. § 4742(a) of the United States Code.[2]

After Ward's conviction, but before the pronouncement of sentence, pursuant to the provisions of 26 U.S.C.A. § 7237(c) (2), the trial court was advised that the conviction was Ward's third offense, which Ward affirmed in open court.

Ward was sentenced to twelve years on each count, to be served concurrently, pursuant to Title 26, U.S.C.A. § 7237(a) and (b).[3]

On appeal, we affirmed Ward's judgment of conviction. United States v. Ward, 7 Cir., 360 F.2d 909 (1966).

Ward was represented by privately employed counsel at all stages of the proceeding through his prior appeal.

Ward filed a *pro se* motion in the district court, properly considered by that court as one seeking to vacate the judgment of conviction under 28 U.S.C.A. § 2255. This motion was denied by the district court, without a hearing, on the grounds that the motion, files and records conclusively showed that petitioner was entitled to no relief.

We granted Ward's petition for leave to proceed on appeal *in forma pauperis*, and ordered counsel appointed to represent him on appeal.

Prior to appointed counsel's appearance, Ward filed a brief *pro se* charging inadequate representation by his counsel at the original trial and that he was denied the right to compulsory process

---

1. "§ 4744. Unlawful possession
   (a) Persons in general.—It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a)—
   (1) to acquire or otherwise obtain any marihuana without having paid such tax, or
   * * *."

2. "§ 4742. Order forms
   (a) General requirement.—It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate.
   * * *."

3. "§ 7237. Violation of laws relating to narcotic drugs and to marihuana
   (a) Where no specific penalty is otherwise provided.—Whoever commits an offense, or conspires to commit an offense, described in part I or part II of subchapter A of chapter 39 for which no specific penalty is otherwise provided, shall be imprisoned not less than 2 or more than 10 years and, in addition, may be fined not more than $20,000.

For a second offense, the offender shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000. For a third or subsequent offense, the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000.
   (b) Sale or other transfer without written order.—Whoever commits an offense, or conspires to commit an offense, described in section 4705(a) or section 4742(a) shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000. For a second or subsequent offense, the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000. If the offender attained the age of 18 before the offense and—
   (1) the offense consisted of the sale, barter, exchange, giving away, or transfer of any narcotic drug or marihuana to a person who had not attained the age of 18 at the time of such offense, or
   (2) the offense consisted of a conspiracy to commit an offense described in paragraph (1),
   the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,000."

when certain witnesses were not subpoened by his counsel. We have considered these claims and find they are without merit, a view shared by Ward's court-appointed counsel in oral argument herein.

■ Ward's able appellate counsel filed an additional brief, raising a ground for reversible error not heretofore presented to the district court nor raised by Ward *pro se*. Because this issue embraces a somewhat new and novel approach to an Eighth Amendment[4] question and suggests a substantial question of law, we have determined to consider it here without further reference to the district court. The Government has responded to the issue on brief and in oral argument.

■ The issue is precisely stated by appellant: "Does 26 U.S.C.A. § 7237 [the sentencing statute] impose a cruel and inhuman punishment upon marihuana offenders in view of current knowledge regarding marihuana?"

The summary of appellant's argument reads:

"The statute under which Defendant was sentenced, namely, 26 U.S.C.A. § 7237(a) and (b), is unconstitutional insofar as it equates opium and marihuana offenses which, in view of current knowledge regarding marihuana, is an unreasonable classification. Said statute, therefore, imposes a cruel and inhuman punishment upon marihuana offenders as opposed to opium offenders. Such a punishment was imposed upon Defendant in violation of his rights as guaranteed by the 8th Amendment to the Constitution of the United States, and his sentence is, therefore, invalid and should be set aside.

"If the statute under which Defendant was sentenced is unconstitutional, then the Indictment did not charge criminal offenses."

Appellant points out that the substantive section of the statute charged to have been violated, §§ 4744(a) (1) and 4742(a), are to be found in Subpart A of Part II of Subchapter A of Chapter 39 of the Internal Revenue Code of 1954, as amended. That Chapter 39 imposes regulatory taxes on certain items and Subchapter A distinguishes between and is entitled "Narcotic Drugs and Marihuana." That Part I of Subchapter A deals with "Narcotic Drugs" such as opium, isonepecaine, coca leaves, and opiate, the raw materials from which heroin and cocaine are derived. That Part II of Subchapter A deals solely with marihuana.

On the other hand, appellant observes that the statute imposing penalties for violations of Parts I and II of Subchapter A of Chapter 39 does not preserve the distinction between "narcotic drugs" and "marihuana," but, rather imposes mandatory *minimum* sentences for violations regardless of whether they involve opium or marihuana. 26 U.S.C.A. § 7237(a) and (b), supra. That under subsection (a) of § 7237, a person who unlawfully possesses either opium or marihuana faces a mandatory *minimum* sentence of two years, five years or ten years, dependent upon whether it is his first, second or subsequent offense, to which additional fines may be imposed. That under subsection (b) of § 7237, a person who sells or transfers either opium or marihuana without the required written "order" faces a mandatory *minimum* sentence of five or ten years dependent upon whether it is his first, second or subsequent offense, to which additional fines may be imposed. That subsection (d) of § 7237 prohibits suspension of sentence or granting probation if it is a second or subsequent offense punishable under subsection (a), but if punishable under subsection (b) the prohibition of suspension or proba-

---

4. The Eight Amendment to the Federal Constitution reads:

"Amendment VIII—Excessive Bail, Fines, Punishments

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

tion is applicable to first offenders as well as second or subsequent offenders.

Treating the constitutional issues generally, in Sperling v. Willingham, 7 Cir., 353 F.2d 6 (1965), cert. denied, 384 U.S. 962, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966), we summarily held: "We find no merit in petitioner's further contention that § 7237(d) is unconstitutional as a denial of equal protection of the laws, or other civil rights, or cruel and unusual punishment to persons convicted under that statute as contrasted with persons convicted of other offenses who may be eligible for parole. Stewart v. United States, 8 Cir., 1964, 325 F.2d 745, 746 [cert. denied, 377 U.S. 937, 84 S.Ct. 1344, 12 L.Ed.2d 301 (1964)], and cases there cited."

In Stewart v. United States, supra, Chief Judge Johnsen, writing for the eighth circuit, considered the Eighth Amendment question with reference to the prohibition of parole in § 7237(d). Referring to the legislative history of the Act, he concluded that "no question of cruel and unusual punishment is involved from the closing of a narcotic sentence to parole privilege," citing with approval Gallego v. United States, 9 Cir., 276 F.2d 914 (1960); Lathem v. United States, 5 Cir., 259 F.2d 393 (1958). See, also, Black v. United States, 9 Cir., 269 F.2d 38 (1959), cert. denied, 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357 (1960); and Hagan v. United States, 5 Cir., 256 F.2d 34, cert. denied, 358 U.S. 850, 79 S.Ct. 77, 3 L.Ed.2d 84 (1958). We agree.

However, in the instant case, appellant argues at length, citing Brown v. Board of Education, 347 U.S. 483, at 494, 74 S. Ct. 686, 98 L.Ed. 873 (1954), that courts may properly consider current knowledge and opinion in determining the constitutionality of a particular statute.

Starting from this premise, appellant then turns to "The Challenge Of Crime In A Free Society," a report by the President's Commission on Law Enforcement and Administration of Justice, a docu-ment published by the United States Government Printing Office, February, 1967. Chapter 8 of this report is entitled "Narcotics and Drug Abuse," pp. 211–237. This chapter presents a brief summary of various narcotics and related drugs and problems concerning regulation, enforcement, abuse and crime penalties, treatment and civil commitment.

A statement concerning marihuana, in relevant part, reads:

"Marihuana has no established and certainly no indispensable medical use. Its effects are rather complicated, combining both stimulation and depression. Much of its effect depends on the personality of the user. The drug may induce exaltation, joyousness and hilarity, and disconnected ideas; or it may induce quietude or reveries. In the inexperienced taker it may induce panic. Or, one state may follow the other. Confused perceptions of space and time and hallucinations in sharp color may occur; the person's complex intellectual and motor functions may be impaired. These effects may follow within minutes of the time the drug is taken.

The influence usually wears off within a few hours but may last much longer in the case of a toxic dose. The immediate physiological effects may include nausea and vomiting, but there are no lasting physical effects, and fatalities have not been noted. Tolerance is very slight if it develops at all. Physical dependence does not develop.

"There is no reliable estimate of the prevalence of marihuana use. To the limited extent that police activity is an accurate measure, use appears to be increasing. Bulk seizures of marihuana by Federal enforcement authorities totaled 5,641 kilograms in 1965 as against 1,871 kilograms in 1960. Bureau of Narcotics arrests for marihuana offenses about doubled over the same period of time. So did the number of arrests by California authorities.

"Marihuana use apparently cuts across a larger segment of the general population than does opiate use, but again adequate studies are lacking. An impressionistic view, based on scattered reports, is that use is both frequent and increasing in depressed urban areas, academic and artistic communities, and among young professional persons. There are many reports of widespread use on campuses, but estimates that 20 percent or more of certain college populations have used the drug cannot be verified or refuted.

"Marihuana is much cheaper than heroin * * *." Id. at 213.

Under this subsection the Commission recommends:

"Research should be undertaken devoted to early action on the further development of a sound and effective framework of regulatory and criminal laws with respect to dangerous drugs. In addition, research and educational programs concerning the effects of such drugs should be undertaken." Id. at 216.

The commission pays particular attention to the lack of flexibility in penalties provided for narcotics and marihuana offenses, with special comment "on marihuana, because of questions that have been raised concerning the appropriateness of the substantive law applicable to this drug." Id. at 224.

This comment refers to the effects produced by the use of marihuana, contrasting it with the use of opiates, and finding little in common between them. It speaks of the relationship of marihuana as a cause of crime and violence, recognizing that here the "differences of opinion are absolute and the claims are beyond reconciliation." It sets out the conflicting views, without attempting its own reconciliation. It mentions the use of marihuana as a prelude to addicting drugs. In this connection, the following observation of the Commission appears relevant:

"The charge that marihuana 'leads' to the use of addicting drugs needs to be critically examined * * *.

"The amount of literature on marihuana is massive. It runs to several thousand articles in medical journals and other publications. Many of these are in foreign languages and reflect the experience of other countries with the use of the drug and with other substances derived from the hemp plant. The relevance of this material to our own problem has never been determined. Indeed, with the possible exception of the 1944 LaGuardia report, no careful and detailed analysis of the American experience seems to have been attempted. Basic research has been almost nonexistent, probably because the principal active ingredient in marihuana has only recently been isolated and synthesized. Yet the Commission believes that enough information exists to warrant careful study of our present marihuana laws and the propositions on which they are based." Id. at 225.

The Commission's recommendation and additional comment then follow:

"The National Institute of Mental Health, should devise and execute a plan of research, to be carried on both on an intramural and extramural basis, covering all aspects of marihuana use."

"The research should identify existing gaps in our knowledge of marihuana. A systematic review of the literature will be necessary. The plan should provide for an intensive examination of the important medical and social aspects of marihuana use. It should provide for surveys of the extent of marihuana use and of the nature of such use, i. e., occasional, periodic, or habitual. It should provide for studies of the pharmacology of marihuana and of its immediate and long-term effects. It might also provide for animal studies. The relation of marihuana use to aggressive behavior and crime should certainly be a

subject of study. So should the relation between marihuana and the use of other drugs. The Commission of course does not wish to imply that the need for research is confined to marihuana. Much remains to be learned, for example, about the potential uses and dangers of hallucinogenic drugs." Id. at 225.

Implementing Chapter 8 of its report, the Commission again republished it as a separate document entitled "Task Force Report: Narcotics and Drug Abuse," with annotations and consultants' papers. United States Government Printing Office, 1967.

We have not attempted a comprehensive statement of all aspects of the Commission's reports. We have merely reported enough to warrant the conclusions we have drawn.

A careful reading of the two documents prepared and published by the Commission compels the conclusion that no definitive resolution of the problem concerning the effects of the use of marihuana has been scientifically established and such determination must await considerable research in depth. The Commission's several recommendations support this generalization. To the same effect, the related problem of suggested statutory change will doubtless have to be considered in light of the results of such research.

In any event, the progress of scientific research in the whole area of narcotics and drug abuse, during the eleven years since the first enactment of the relevant statute, § 7237, under review, has not resulted in the establishment of scientific knowledge to the extent that would enable us to nullify § 7237(a) and (b), supra, on constitutional grounds, even if we deemed it appropriate to do so. In this context, we distinguish Brown v. Board of Education, supra, relied on by appellant.

In passing, we note that our attention has been called to a variety of magazine articles, and other publications, bearing generally on the evils associated with the use of marihuana. We have read them, and many more. Certainly, we do not possess even the elementary scientific knowledge to hazard a guess on what future results of basic medical research may establish. And to philosophize on the social aspects of the problem would be a venture into fields not within the province of this opinion.

Any normal observer would have to remain in a state of prolonged slumber to escape the impact of the public interest in the use of marihuana as sharpened by the never ending reporting of current events by the whole range of the communications media. This is all to the good. It should serve to focus attention on the need for definitive basic research. The end result will be a problem requiring the careful attention of the legislative branch of the Government.

As one perceptive observer has written: "And it is for the legislature to draw the lines of what is to be permitted as an open area of choice and what is to be prohibited as a social evil. So long as the legislature outlaws the possession of marijuana, the use of the drug, even in moderation, is fraught with the gravest personal risks."[5] We agree.

Mr. William F. McNagny, a distinguished member of the Fort Wayne, Indiana bar, served without compensation as court-appointed counsel in this appeal. We commend him highly for his dedicated intelligent service in the performance of this professional responsibility. He served with great credit to himself and to the bar.

The order of the district court denying appellant's motion for relief pursuant to 28 U.S.C.A. § 2255 is affirmed.

Affirmed.

5. "Marijuana: It's Up to the Young To Solve the Problem," by Chief Judge Charles E. Wyzanski, Jr., United States District Court of Massachusetts, in The New Republic, October 21, 1967.